UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA AKKAWI, an individual; YASMIN AKKAWI, an individual; KATELYN J. BUTTON, an individual; ERIC STELL, an individual; STEVE W. FOX, an individual; EDMOND TARVERDIAN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>KASRA SADR, an individual; CAR LAW FIRM, a business entity form unknown; THE SADR LAW FIRM, a professional law corporation; NATIONWIDE VIN MARKETING, a business entity form unknown; CALIFORNIA DEPARTMENT OF MOTOR VEHICLES, an agency of the State of California; and DOES 1 through 20, inclusive,<br><br>Defendants. | No.  2:20-cv-01034-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiffs Diana Akkawi; Yasmin Akkawi; Katelyn J. Button; Eric Stell; Steve W. Fox; and Edmond Tarverdian seek to recover damages and obtain injunctive relief against Kasra Sadr ("Defendant Sadr"), the Car Law Firm ("Defendant CLF"), the Sadr Law Firm ("Defendant SLF"), Nationwide VIN Marketing ("Defendant Nationwide") (collectively "Defendants"), and Doe Defendants 1 to 20.  The California

1

1   Department of Motor Vehicles ("DMV"), an agency of the State of California, was a

2   previous Defendant to this action before it was voluntarily dismissed by all Plaintiffs.

3   ECF Nos., 9, 10.  Plaintiffs allege, inter alia, that Defendants conspired to acquire

4   Plaintiffs' personal and private records from the DMV in order to solicit representation for

5   litigation.  Complaint, ECF No. 1 at 2.  Presently before the Court are Motions to Dismiss

6   for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6), submitted

7   both by Defendants Sadr and SLF[1] ( ECF No. 21) and by Defendant Nationwide (ECF

8   No. 22).  The Motions include requests that Plaintiffs' lawsuit be dismissed under the so-

9   called Anti-SLAPP (Strategic Lawsuit Against Public Participation) provisions of

10   California Code of Civil Procedure § 425.16(b).  For the reasons that follow, Defendants'

11   Motions are DENIED in full.[2]

12

13                                    **BACKGROUND**[3]

14

15         Defendant Sadr is a California-licensed attorney and is associated with two law

16   firms: Defendant SLF, of which he is the sole officer and director, and Defendant CLF,

17   which is an association of independent law firms that includes Defendant SLF.  ECF

18   No. 12 at 5; see ECF No. 24 at 2-3 (stating Defendant Sadr is the founder of both

19   Defendant SLF and Defendant CLF).  Defendant CLF seeks to inform consumers of

20   safety violations with their vehicles and represent them in legal actions against car

21   dealers.  ECF No. 24 at 3.  Defendant Nationwide is a marketing company that provides

22   a public database to associate any vehicle identification number ("VIN") with the

23   registered owners of specific vehicles.  ECF No. 12 at 6.

24         [1] Sadr Law Firm d/b/a Car Law Firm, per Defendants.  Mot. at 1.  Accordingly, any reference to
25   Defendant SLF is a reference to Defendant CLF, unless noted.

         [2] Because oral argument would not have been of material assistance, the Court ordered this
26   matter submitted on the briefs.  ECF No. 23; see E.D. Cal. Local Rule 230(g).

27         [3] This Court has already endeavored to provide the background to the instant litigation in recent
     filings.  It is reproduced nearly verbatim here from the Court's denial (ECF No. 28) of Plaintiffs' Motion for a
28   Temporary Restraining Order (ECF No. 12).

                                           2

1    Plaintiffs are six individual vehicle owners who received solicitation letters from

2    Defendant CLF stating that their vehicles have been flagged for safety issues as having

3    frame or structure damage and requesting they call Defendant CLF for a case review

4    and a copy of the Vehicle History Report.  See, e.g., ECF No. 12, Ex. S at 34 ("[T]his

5    letter is written to you as a specific advertisement and solicitation for your business.").

6    The letters are individually tailored to include the make, model, year, and VIN of each

7    Plaintiff's vehicle.  Id.  Plaintiffs claim they never provided Defendants with any personal

8    or vehicle information, that Defendants did not inspect any of their vehicles at the time of

9    purchase, and that Defendants were not involved in any part of the vehicle purchase.

10   ECF No. 12 at 11.  Because they never provided Defendants with such information,

11   Plaintiffs allege that the only way Defendants could have acquired it is through the DMV

12   in violation of law.  Id. at 2; ECF No. 25 at 5.

13   In their Complaint, Plaintiffs allege twelve causes of action: (1) Violations of the

14   Driver's Privacy Protection Act ("DPPA") (18 U.S.C. §§ 2721 et seq.); (2) Violations of

15   Cal. Veh. Code §§ 1808 et seq.; (3) Conversion; (4) Trespass to Personal Property;

16   (5) Intrusion into Private Affairs; (6) Negligence; (7) Civil Conspiracy; (8) Unjust

17   Enrichment; (9) Violations of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500

18   et seq.); (10) Violations of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200

19   et seq.); (11) Violation of Federal Right to Privacy; and (12) Declaratory Relief.  ECF

20   No. 1.

21   Defendants now challenge Plaintiffs' Complaint through their Motions to Dismiss

22   which, as indicated above, take issue with whether Plaintiffs have stated viable claims in

23   the first instance.  Defendants further argue that because the subject matter of Plaintiffs'

24   lawsuit impinges on their constitutional rights to free speech, it is further subject to

25   dismissal under the anti-SLAPP provisions of California law.

26   ///

27   ///

28   ///

3

1

**STANDARD**

2

3

     **A.     Federal Rule of Civil Procedure 12(b)(6)**

4          On a motion to dismiss for failure to state a claim under Federal Rule of Civil

5 Procedure ("FRCP") 12(b)(6), all allegations of material fact must be accepted as true

6 and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut.

7 Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and

8 plain statement of the claim showing that the pleader is entitled to relief' in order to 'give

9 the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

10 Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson,

11 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss

12 does not require detailed factual allegations.  However, "a plaintiff's obligation to provide

13 the grounds of his entitlement to relief requires more than labels and conclusions, and a

14 formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations

15 and quotation marks omitted).  A court is not required to accept as true a "legal

16 conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

17 (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right

18 to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan

19 Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

20 that the pleading must contain something more than "a statement of facts that merely

21 creates a suspicion [of] a legally cognizable right of action")).

22          Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

23 assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and

24 quotation marks omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is

25 hard to see how a claimant could satisfy the requirements of providing not only 'fair

26 notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing

27 Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a

28 claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not

4

1  nudged their claims across the line from conceivable to plausible, their complaint must

2  be dismissed." Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a

3  savvy judge that actual proof of those facts is improbable, and 'that a recovery is very

4  remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236

5  (1974)).

6      **B.    Anti-SLAPP, California Code of Civil Procedure § 425.16**

7      A plaintiff's claim which arises from an act, by a defendant, made in furtherance of

8  that defendant's "right of petition or free speech under the United States Constitution or

9  the California Constitution in connection with a public issue," has no merit and will not

10  stand under California's anti-SLAPP statute.  Cal. Civ. Proc. Code § 425.16(b)(1).  A

11  defendant may use an anti-SLAPP motion to strike in federal court.  Thomas v. Fry's

12  Electronics, Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005).  The special anti-SLAPP

13  motion is available "unless the court determines that the plaintiff has established that

14  there is a probability that the plaintiff will prevail on the claim." Planned Parenthood

15  Fed'n of Am., Inc. v. Ctr. for Med. Progress, 890 F.3d 828, 832-33 (9th Cir. 2018)

16  (quoting Cal. Civ. Proc. Code § 425.16(b)(1) (emphasis added)).

17      Anti-SLAPP safeguards are designed to "protect individuals from meritless,

18  harassing lawsuits whose purpose is to chill protected expression." Metabolife Intern.

19  Inc. v. Wornick, 264 F.3d 832, 837, n.7 (9th Cir. 2001).  "[S]ection 425.16 expressly

20  'defines the kinds of claims that are subject to the anti-SLAPP procedures.'" City of

21  Cotati v. Cashman, 29 Cal. 4th 69, 75 (2002) (citing Chaves v. Mendoza,

22  94 Cal. App. 4th 1083, 1087 (2001)). Under that statute, protected activities include:

23      (1) any written or oral statement or writing made before a
    legislative, executive, or judicial proceeding, or any other
24      official proceeding authorized by law; (2) any written or oral
    statement or writing made in connection with an issue under
25      consideration or review by a legislative, executive, or judicial
    body, or any other official proceeding authorized by law;
26      (3) any written or oral statement or writing made in a place
    open to the public or a public forum in connection with an issue
27      of public interest; or (4) any other conduct in furtherance of the
    exercise of the constitutional right of petition or the

28

5

1    constitutional right of free speech in connection with a public
     issue or an issue of public interest.
2

3    Cal. Civ. Proc. Code § 425.16(e).

4        Anti-SLAPP motions require a two-part analysis: "(1) the defendant must make a

5    prima facie showing that the suit arises from an act in furtherance of the defendant's

6    rights of petition or free speech; and (2) once the defendant makes this showing, the

7    burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged

8    claims." Roberts v. McAfee, Inc., 660 F.3d 1156, 1163 (9th Cir. 2011) (internal quotation

9    marks omitted). "In the anti-SLAPP context, 'probability' is a low bar." Id. "Only a cause

10   of action that satisfies both prongs of the anti-SLAPP statute — i.e., that arises from

11   protected speech or petitioning and lacks even minimal merit — is a SLAPP, subject to

12   being stricken under the statute." Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002)

13   (emphasis original); see also Planned Parenthood Fed'n of Am., Inc., 890 F.3d at 833

14   ("[A] defendant's anti-SLAPP motion should be granted when a plaintiff presents an

15   insufficient legal basis for his or her claims or when no sufficiently substantial evidence

16   exists to support a judgment for him or her.") (emphasis original).

17       Significantly, in Planned Parenthood, the Ninth Circuit identified a conflict between

18   California's anti-SLAPP law and the FRCP. See id. at 833. In order to prevent a

19   situation that "would effectively allow the state anti-SLAPP rules to usurp the federal

20   rules," Planned Parenthood found that federal courts may apply the standards of either

21   FRCP 12(b)(6) or FRCP 56 when analyzing the merit of a plaintiff's claim. Id. at 834.

22   Therefore, depending on whether an anti-SLAPP motion challenges the legal sufficiency

23   as opposed to the factual sufficiency of a plaintiff's complaint, the merits should be

24   considered under either the federal motion to dismiss or summary judgment standard.

25   Sanchez v. Am. Media, Inc., No. CV 20-2924-DMG (PVCx), 2020 WL 8816343 at *4

26   (C.D. Cal. Dec. 29, 2020).

27   ///

28   ///

1            **ANALYSIS**

2

3      **A.      Claim One: Violations of the Federal Driver's Privacy Protection Act**

4           In enacting the DPPA, Congress was motivated by its "[c]oncern[] that personal

5    information collected by States in the licensing of motor vehicle drivers was being

6    released — even sold — with resulting loss of privacy for many persons."  Maracich v.

7    Spears, 570 U.S. 48, 51-52 (2013) (citing 18 U.S.C. §§ 2721-2725).  Consequently,

8    "[t]he DPPA regulates the disclosure of personal information contained in the records of

9    state motor vehicle departments."  Id. at 52.  Under the DPPA, disclosure of such

10   information is prohibited unless made "for a purpose permitted by an exception listed in 1

11   of 14 statutory subsections."  Id. (citing § 2721(b)(1)-(14)).  Plaintiffs allege in the instant

12   matter that Defendants are in violation of the DPPA and claim their activities do not fall

13   within any of the statute's enumerated exceptions.  Compl. at 2-3.

14           In moving to dismiss, Defendants assert that Plaintiffs have not demonstrated a

15   DPPA violation, relying primarily on the claim they were permitted under § 2721(b)(2) to

16   obtain personal information from motor vehicle records: "[F]or use in connection with

17   matters of motor vehicle or driver safety . . . ."[4]  Mot. at 13 (emphasis omitted).  Because

18   the "safety/solicitation letters" sent by Defendants each state that the subject vehicle had

19   "Auction Announced Frame Damage" and "may be unsafe to drive," Defendants believe

20   they are accordingly entitled to § 2721(b)(2)'s safety exemption.  Mot. at 14.

21           In considering the import of the Supreme Court's decision in Maracich v. Spears

22   — the high court's seminal pronouncement on the reach of DPPA liability — Defendants

23   argue that Maracich "only dealt with the litigation exception of § 2721(b)(4) and did not

24   address any other subsection."  Mot. at 15 (citing 570 U.S. 48, 78 (2013)).  Defendants

25   specifically highlight Maracich's finding that the litigation exception of § 2721(b)(4)

26           [4] The exception reads in whole: "(2) For use in connection with matters of motor vehicle or driver
27   safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories;
     performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research
     activities, including survey research; and removal of non-owner records from the original owner records of
28   motor vehicle manufacturers."  18 U.S.C. § 2721(b)(2).

1   required an attorney to act as "an officer of the court," not as a "commercial actor." Id. at

2   14 (citing Maracich, 570 U.S. at 62).  In contrast, Defendants hold, the § 2721(b)(2)

3   safety exception "does not need any acting as an 'officer of the court[,]'[] and it does not

4   have any restrictions on solicitation, so long as the exception is met."  Mot. at 15.  CLF,

5   Defendants contend, "should be thought of as any other commercial business entity that

6   is utilizing one of the DMV's allotted exceptions for business purposes."  Mot. at 15.

7   Defendants draw the analogy under § 2721(b)(2) of car dealerships sending recall

8   notices on airbags to generate business, or smog shops using DMV records to mail

9   consumer alerts (both of which have been deemed to not run afoul of the DPPA) to claim

10   they should be considered no differently.

11       As an initial matter, Defendants are generally correct that Maracich sought to limit

12   its holding to § 2721(b)(4).  See, e.g., Maracich, 570 U.S. at 59, 78.  However, this Court

13   finds the remainder of the opinion instructive, as the Supreme Court spends

14   considerable time discussing the DPPA as a whole, including other exceptions.  See

15   generally id. at 65-69.  For example, the high court advised that DPPA was to be read

16   narrowly.  See, e.g., id. at 60 ("It is true that the DPPA's 14 exceptions permit disclosure

17   of personal information in a range of circumstances.  Unless commanded by the text,

18   however, these exceptions ought not operate to the farthest reach of their linguistic

19   possibilities if that result would contravene the statutory design.").  Other federal courts

20   have likewise held.  See, e.g., Senne v. Vill. of Palatine, Ill., 695 F.3d 597, 603 (7th Cir.

21   2012) ("The statute then authorizes specific disclosures — each of which . . . has a

22   limited object and a limited class of recipients.") (second emphasis added); Thomas v.

23   George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A., 525 F.3d 1107,

24   1114 (11th Cir. 2008) (citing subsection (b)(2) in holding that certain "§ 2721(b)

25   enumerations point to a particularized purpose") (emphasis added).

26   ///

27   ///

28   ///

1    While the <u>Maracich</u> Court did not discuss (b)(2) beyond a comparison with

2    (b)(12)[5] (<u>Maracich</u>, 570 U.S. at 69) — a discussion not helpful for our purposes — it did

3    discuss attorney solicitation under the DPPA at length.  For example, consider this

4    passage:

5        Petitioners and other state residents have no real choice but
         to disclose their personal information to the state DMV,
6        including highly restricted personal information.  The use of
         that information by private actors to send direct commercial
7        solicitations without the license holder's consent is a
         <u>substantial intrusion on the individual privacy the Act protects</u>.
8

9    <u>Id.</u> at 71 (emphasis added).

10    Elsewhere, the Court called the restriction of "disclosure of personal information

11    contained in motor vehicle records to businesses for the purpose of direct marketing and

12    solicitation" an "important objective of the DPPA."  <u>Id.</u> at 66-67.  The Court went on to

13    address activities directly implicated in this case: "Direct marketing and solicitation

14    present a particular concern not only because these activities are of the ordinary

15    commercial sort but also because contacting an individual is an <u>affront to privacy</u> even

16    beyond the fact that a large number of persons have access to the personal

17    information."  <u>Id.</u> at 67 (emphasis added).

18    Defendants' contention that "CLF should be thought of as any other commercial

19    business entity that is utilizing one of the DMV's allotted exceptions for business

20    purposes" is questionable.  <u>See</u> Mot. at 15.  <u>Maracich</u> rejected a similar legal ploy for

21    evading (b)(12)'s solicitation restrictions through the litigation exception of (b)(4), noting

22    that allowing such conduct "would create significant tension in the DPPA between the

23    litigation and solicitation exceptions."  <u>Maracich</u>, 570 U.S. at 68.  In fact, the Court

24    advises that (b)(12) offers important "additional evidence of the DPPA's statutory design

25    to interpret exceptions whose breadth and application are uncertain" (<u>id.</u> at 67-68) — i.e.,

26    because Congress decided to target bulk solicitation with the requirement of the express

27    

28        [5] "(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains."  18 U.S.C. § 2721(b)(12).

9

1   consent of drivers, (b)(2) must be considered in tandem with that restrictive backdrop.

2   See id. at 67.  Accordingly, it is doubtful that Congress intended for clever attorneys to

3   circumvent (b)(12)'s restrictions against solicitation by convoluted reliance on other

4   DPPA exceptions.[6]

5          In the instant matter, Defendants may well contend that their purpose in sending

6   the subject solicitation letters was primarily or even exclusively safety-related — and

7   perhaps that is true — but that is not the Court's inquiry today.  Rather, the question is if

8   Plaintiffs have sufficiently pled factual allegations to plausibly assert that Defendants

9   have violated the DPPA.  Upon review of applicable authority, this Court finds that they

10  have.  Defendants' efforts to invoke (b)(2) are unavailing and go well beyond this

11  preliminary stage of testing the pleadings.  In their Complaint, Plaintiffs allege that

12  Defendants accessed restricted DMV records for use in marketing legal services, either

13  directly or through third parties.  Compl. at 18.  Plaintiffs include as exhibits several such

14  solicitation letters.  See, e.g., Compl., Exs. 6, 7, 9, and 10.  Defendants' instant Motion,

15  meanwhile, does not admit or deny accessing these databases in such a way, but

16  speaks vaguely about other ways information can be obtained.  See Mot. at 7-9.[7]

17         In the alternative to their (b)(2) argument, Defendants contend that Plaintiffs

18  "cannot show that Defendants accessed DMV records of these 6 Plainitiffs [sic]."  While

19  potentially accurate, that again is not the relevant analysis.  "[A] plaintiff armed with

20

21         [6] This Court finds limited authority from other tribunals considering (b)(2)'s safety exception.  In
    Pennsylvania, a commonwealth appellate court considered a government agency's denial of a request
22  from a magazine publisher seeking registered snowmobile owners in the state.  Hartman v. Dep't of
    Conservation & Nat. Res., 892 A.2d 897, 898-99 (Pa. Commw. Ct. 2006).  The publisher argued that they
23  should be allowed access to the personal information under DPPA's (b)(2) safety exception, "because the
    September 2005 issue of the [publisher's magazine] contained articles to promote safety."  Id. at 902.  The
24  court was "not persuaded."  Id.  The court explained it was "clear the requested information would be used
    primarily to promote snowmobiling in Pennsylvania and membership" in a snowmobiling organization.  Id.
25  at 905.  Ultimately, the court held that any tangential relationship to safety did not sufficiently bring a
    primarily commercial endeavor under the exception of (b)(2).  See id.

26         [7] This is not the first time this Court has made such an observation.  See ECF No. 12 at 4 n.4
    (though denying Plaintiffs' request for a temporary restraining order, this Court observed that "Defendants'
27  Opposition brief offered little to no assistance.  Defendants simply state that Plaintiffs' information was not
    obtained from the DMV, but then devote significant discussion to arguing that if the information came from
28  the DMV, CLF would be entitled to access that information").

1    nothing more than conclusions" cannot "unlock the doors of discovery."  Iqbal, 556 U.S.

2    at 678-79.  Here, Plaintiffs do not provide mere conclusions, but rather plead with

3    sufficient particularity and plausibility that dismissal of Claim One would be inappropriate

4    at this juncture.  Defendants' Motion as to Claim One is DENIED.

5         **B.    Claim Two: Violations of California Vehicle Code §§ 1808 et seq.**

6         Claim Two of Plaintiffs' Complaint seeks redress under California's statutory

7    counterpart to the Federal DPPA, as codified by the California Driver's Protection

8    Privacy Act, Cal. Veh. Code §§ 1808, et seq. ("CDPPA").  The CDPPA is based upon its

9    federal counterpart, with the California statute specifically requiring that disclosure be

10   compliant with the DPPA.  Cal. Veh. Code § 1808(e).  It is thus not surprising that

11   Defendants' arguments for dismissing Claim One and Claim Two are virtually identical.

12   Defendants claim that Plaintiffs will not be able to demonstrate that Defendants

13   accessed DMV records for their addresses, and even if they can, such access was

14   permitted under § 2721(b)(2), and therefore also through the CDPPA.   Mot. at 15-16.

15   Because the Court has already addressed each of these arguments, it may proceed

16   without further analysis.  Defendants' Motion as to Claim Two is DENIED.

17        **C.    Claims Three, Four, Six, Seven, and Eight: Conversion, Trespass to
           Personal Property, Negligence, Civil Conspiracy, and Unjust
18         Enrichment**

19        Defendants' Motion as to Claims Three, Four, Six, Seven, and Eight rests on the

20   same premise underlying their DPPA and CDPPA claims — i.e., that (1) Plaintiffs have

21   not demonstrated that Defendants accessed DMV records, and (2) even if Defendants

22   did access these records, they were permitted to do so under (b)(2) of the DPPA.  The

23   Court has already declined these arguments for purposes of this Motion.  Accordingly,

24   Defendants' Motion as to Claims Three, Four, Six, Seven, and Eight is DENIED.

25   ///

26   ///

27   ///

28   ///

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.     Claim Five: Intrusion into Private Affairs

Defendants move to dismiss Plaintiffs' fifth cause of action because "Defendants right to access Plaintiffs['] information via 18 U.S.C.S. § 2721(b)(2) negates the elements of this cause of action . . . ."  Mot. at 18.  As set forth above, the Court has already rejected that argument.  Accordingly, Defendants' Motion as to Claim Five is DENIED.

### E.     Claims Nine and Ten: False Advertising

Defendants aver that the Claims Nine and Ten as related to false advertising and unfair business practices "should be dismissed because are [sic] subject to Anti-SLAPP and cannot show that DMV was accessed at all, and Plaintiffs have not plead 'reliance' or 'damages' on the safety letters they received."  Mot. at 17.  Defendants contend that their letters were merely cautionary, not false advertising.  For example, the letters warn that a vehicle "may be unsafe," or there is "possible danger."  Id. (emphasis omitted).

For Claim Nine, Plaintiffs appeal to the False Advertising Law ("FAL") under Cal. Bus. & Prof. Code §§ 17500 et seq., which "prohibits the public use of untrue or misleading statements."  Compl. at 33, ¶ 95.  Plaintiffs contend that they have incurred damages in terms of loss of privacy and loss of control of their own information, with damage amounts "to be proved at trial."  Id. at 33-34, ¶ 99.  For Claim Ten, Plaintiffs cite violations of Unfair Competition Law ("UCL").  Cal. Bus. & Prof. Code §§ 17200 et seq.

The FAL "prohibits any 'unfair, deceptive, untrue, or misleading advertising.' Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) (citing Cal. Bus. & Prof. Code § 17500).  The UCL "prohibits any unlawful, unfair or fraudulent business act or practice."  Id.  Such claims are considered under the so-called "reasonable consumer test."  Id.  The California Supreme Court has recognized "that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002) (internal quotation marks omitted) (alteration original).  The Ninth Circuit, citing the practice of California courts, has cautioned that "whether a business practice is deceptive will usually be a question of

12

1  fact not appropriate for decision on demurrer." <u>Williams</u>, 552 F.3d at 938 (stating that in

2  such cases it is a "rare situation in which granting a motion to dismiss is appropriate").

3         The instant matter is not such a rare situation.  While Defendants' safety letters

4  convey their warnings using some cautionary language ("may," "possible"), the overall

5  content of the letters (e.g., that the vehicle may be unsafe to drive, not worth what it was

6  purchased for, and so on) may inevitably be misleading to consumers.  <u>See, e.g.</u>,

7  Compl., Ex. 6 (Defendants' letter to Akkawi Yasmin).  Plaintiffs plausibly claim that

8  Defendants lacked knowledge of the extent consumers were already aware of such

9  damage, how much damage actually existed, how much the vehicle's worth was

10  diminished, etc.  Compl. at 15-16, ¶¶ 41-42.  In other words, Plaintiffs have sufficiently

11  pled these claims to survive a motion to dismiss.  Accordingly, Defendants' Motion as to

12  Claims Nine and Ten is DENIED.

13         **F.    Claim Eleven: Violation of Federal Right to Privacy**

14         Defendants caveat their opposition to Claim Eleven that if Claim One "is

15  dismissed, so should this cause of action as they related [<u>sic</u>] to same issues."  Mot. at

16  17.  Because this Court declined to dismiss Claim One, no further discussion is required.

17  Defendants' Motion as to Claim Eleven is DENIED.

18         **G.    Anti-SLAPP Motion**

19         As an initial matter, as federal question claims, anti-SLAPP does not apply to the

20  First, Second (CDPPA, which requires compliance with the DPPA), or Eleventh Causes

21  of Action.  <u>See</u> <u>Globetrotter Software, Inc. v. Elan Computer Grp., Inc.</u>, 63 F. Supp. 2d

22  1127, 1130 (N.D. Cal. 1999) (applying the <u>Erie</u> doctrine).  The additional claims are not

23  subject to anti-SLAPP because the Plaintiffs have sufficiently pled these claims on their

24  merits.  <u>See</u> <u>Planned Parenthood</u>, 890 F.3d at 832-33.  Finally, the Court is influenced

25  by the Seventh Circuit's finding that DPPA enforcement does not violate the First

26  Amendment, thus precluding a prima facie showing of implicated free speech rights.

27  <u>See generally</u> <u>Dahlstrom v. Sun-Times Media, LLC</u>, 777 F.3d 937 (7th Cir. 2015); <u>cf.</u>

28  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1110 (9th Cir. 2003).

1

**CONCLUSION**

2

3      In consideration of the foregoing, Defendants' Motions to Dismiss (ECF Nos. 21

4    and 22) are **DENIED** in full.[8]

5      IT IS SO ORDERED.

6

7      Dated:  August 31, 2021

8      _____

9      MORRISON C. ENGLAND, JR.
       SENIOR UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    _____

26      [8] In opposition, Plaintiffs filed 366 pages in evidentiary objections to the Sadr Declaration.  ECF
      No. 27-2.  The Sadr Declaration is outside the pleadings and thus inappropriate for consideration in a
27    12(b)(6) motion.  See, e.g., Thompson v. Davis, 295 F.3d 890, 896 n.3 (9th Cir. 2002).  As to Defendants'
      request for judicial notice of 41 exhibits, ECF No. 21-2, each is DENIED.  Judicial notice is not appropriate
28    for contents outside the complaint, or where the authenticity or relevance are contested.  See Coto
      Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

14