UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA AKKAWI, et al., | No. 2:20-cv-1034 MCE AC |
| Plaintiffs, | |
| v. | ORDER |
| KASRA SADR, et al., | |
| Defendants. | |

This matter is before the court on four motions to compel from plaintiff, erroneously filed in one docket entry at ECF No. 77, but briefed with four separate joint statements, two of which are identical (ECF Nos. 90 and 92), and one of which is not a joint statement but an affidavit pursuant to Local Rule 251(d) (ECF No. 93). These discovery motions were referred to the magistrate judge pursuant to E.D. Cal. R. 302(c)(1).

The document filed at ECF No. 92 is STRICKEN because it is a duplicate. The court will rule on the remaining briefed discovery motions: ECF No. 90: Motion to Compel Responses to Requests for Production of Documents Not Produced by Defendant VIN; ECF No. 91: Motion to Compel Responses to Questions not Answered by Defendant Kasra Sadr for Himself and Defendant Nationwide VIN Marketing in their Deposition; and ECF No. 93: Motion to Compel Responses to Questions not Answered by Deponent Richard Trefflich at his Deposition. The motion briefed at ECF No. 90 is GRANTED. The motions at ECF No. 91 and 93 are GRANTED

1

in part and DENIED in part as described below.

## I.  Relevant Background

Plaintiffs are suing defendants alleging a conspiracy to acquire their personal and private information from the Department of Motor Vehicles. ECF No. 1 at 2. The complaint alleges that defendants Kasra Sadr, Car Law Firm, and The Sadr Law Firm used plaintiffs' information the purpose of sending letters to them to solicit representation for litigation against the sellers of the vehicles that plaintiffs purchased. Id. In these letters, defendants made allegations that the sellers of these vehicles may have committed fraud on plaintiffs by selling them a vehicle, which may have frame, unibody, structural, or major damage without disclosing this fact. Id. After using this information to solicit legal representation, defendants allegedly transferred plaintiffs' personal information to defendant Nationwide VIN Marketing to sell it to the public online as direct marketing data. Id. Plaintiffs allege these actions by the defendants violate the Driver's Privacy Protection Act ("DPPA") at 18 U.S.C. § 2721 et seq. and Cal Veh. Code § 1808 *et seq*. Plaintiffs seek injunctive relief and damages. ECF No. 1 at 4.

## II.  Motion to Compel Legal Standard

The scope of discovery in federal cases is governed by Federal Rule of Civil Procedure 26(b)(1). The current Rule states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Relevancy to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to

other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  Relevance, however, does not establish discoverability; in 2015, a proportionality requirement was added to Rule 26.  Under the amended Rule 26, relevance alone will not justify discovery; discovery must also be proportional to the needs of the case.

A party seeking to compel discovery has the initial burden to establish that its request is proper under Rule 26(b)(1).  If the request is proper, the party resisting discovery has the burden of showing why discovery was denied; they must clarify and support their objections. Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).  General or boilerplate objections, without explanation, are not prohibited but are insufficient as a sole basis for an objection or privilege claim.  Burlington Northern & Santa Fe Ry. v. United States Dist. Court, 408 F.3d 1142, 1149 (9th Cir. 2005).

### III.   Discussion

A.   Motion to Compel Document Production from Defendant VIN

Plaintiffs have submitted to defendant Nationwide VIN Marketing multiple requests for production, none of which defendant VIN has responded to.  ECF No. 90 at 10-12.  On or about April 7, 2022, defendant Sadr sent plaintiffs a letter stating defendant VIN had no documents responsive to the RFPs.  Id. at 9.  In the Joint Statement, defendants raise two contentions: (1) that the motion to compel is untimely, and (2) that defendant VIN has nothing to produce with respect to any of the RFPs.  Id. at 24-25.

On September 21, 2022, District Judge Morrison C. England, Jr. granted a motion to amend the complaint and vacated the discovery deadline, re-setting it to 180 days out.  ECF No. 97.  This eliminates any timeliness concern with plaintiffs' motion.  Defendants' assertion that no responsive documents exist, however, could be an acceptable response but must be written in response to each request for production as a sworn statement from counsel.  In the absence of evidence to the contrary, plaintiff is required to accept defendant's response to this request that, *despite a diligent search*, no responsive documents exist.  See e.g., Mootry v. Flores, 2014 WL 3587839, *2 (E.D. Cal. 2014) ("Defendants cannot be required to produce documents that do not

exist. Absent evidence to the contrary, which has not been presented, Plaintiff is required to accept Defendants' response no such documents exist."); accord, Holt v. Nicholas, 2014 WL 250340, *4 (E.D. Cal. 2014) ("Absent evidence to the contrary, which has not been presented, Plaintiff is required to accept Defendant's amended response that no such documents responsive to his request exist."). Still, plaintiffs need not take counsel's generalized and unsworn word for it. Defendant will be compelled to properly respond to the RFPs in accordance with the Federal Rules of Civil Procedure and the Local Rules of this court.

    B.    <u>Motion to Compel Deposition Answers from Defendants Kasr Sadr and VIN</u>

On or about February 10, 2022, plaintiffs' counsel took the deposition of Defendant Sadr, who appeared for himself and as the person most knowledgeable for Defendant VIN. (Sifers Decl. ¶5, Ex. C to Ex. 100.) During his deposition, defendant Sadr refused to answer multiple questions related to, among other things, how he acquired plaintiffs' and other vehicle owners' personal information, his firms' practice for intake of the clients who respond to his solicitation letters, and why he submitted dozens of Attorney Information Request forms to the DMV.

The main objections presented by defendant Sadr are attorney-client privilege and work product protection. "[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (quoting United States v. Bauer, 132 F.3d 504, 507 (9th Cir. 1997)). Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed and is applied in the Ninth Circuit using an eight-part test: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting In re Grand Jury Investigation, 974 F.2d 1068, 1071 n. 2 (9th Cir. 1992)). The objecting party bears the burden of proving each element. Graf, 610 F.3d at 1156.

The work product doctrine affords a qualified protection from discovery for all trial

4

preparation materials prepared "in anticipation of litigation." Hickman v. Taylor, 329 U.S. 495 (1947); Fed. R. Civ. P. 26(b)(3). "[B]ecause the work product doctrine is intended only to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within the work product." Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (citations omitted). "Only when a party seeking discovery attempts to ascertain facts, 'which inherently reveal the attorney's mental impression,' does the work product protection extend to the underlying facts." Id.

When a party withholds information otherwise discoverable by claiming that the information is protected by the work product doctrine, the party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). "An existing privilege exemption from discovery must be raised in a proper fashion to be effective in justifying a refusal to provide discovery. Failure to assert the privilege objection correctly can mean that the privilege is waived." 8 Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.).

The court has reviewed the briefing and considered the exhibits. Each question at issue, along with the court's ruling on the objection, is presented in list format below.

- **Question 1** -- Ex. C to Ex. 100 at 66:7-14, Ex. 102

    MR. SIFERS: Is there any reason that you didn't explain where you had specifically gotten this information [Exhibit 5, a March 16, 2020 letter from Car Law Firm to Plaintiff Katelyn Button]?

    MR. SADR: I don't want anyone to know where I got it. None of their business.

    o Ruling: SUSTAINED, question adequately answered.

- **Question 2** - Ex. C to Ex. 100 at 129:8 to 130:23

    MR. SIFERS: When someone gets a [solicitation] letter like this [to hire you as a lawyer] – I'm talking about more recently in the last few years – what is the intake procedure? If they call the number, what happens?

    MR. SADR: that's going to be attorney-client privilege.

    o Ruling: OVERRULED.

5

- **Question 3** - Ex. C to Ex. 100 at 130:6-131:4

    MR. SIFERS: No. My question is: Who does the preliminary review of the case to determine if it should go to an attorney?

    MR. SADR: I am not going to disclose that.

    MR. SIFERS: Based on what?

    MR. SADR: Based on anything would be specific to certain clients. First of all, there isn't one person that does all – we have had all these years different employees and so forth. It would relate to a particular client and that is going to be work product, period.

    - Ruling: OVERRULED.

- **Question 4** - Ex. C to Ex. 100 at 132:5-7

    MR. SIFERS: Did you write this letter, Exhibit 26 [located within ECF No. 91-1]?

    MR. SADR: That would be attorney-client privilege, but I don't know how you got a copy of this letter and its' private and you should have it, so –

    - Ruling: OVERRULED.

- **Question 5** - Ex. C to Ex. 100 at 132:17 to 133:3

    MR. SIFERS: So I'm curious – did you write this letter [referring to Exhibit 26]?

    MR. SADR: I am not going to answer that.

    - Ruling: OVERRULED.

- **Question 6** - Ex. C to Ex. 100 at 143:21 to 144:5

    MR. SIFERS: Why was it that you were submitting these request forms [referring to the Attorney's Information Request forms to the DMV] related to the Murillo case?

    MR. SADR: I can't tell you that because that would be work product, but I can tell you, in general, we wanted to show a pattern and practice that Paul Blanco wasn't just doing this to one person, they had a pattern and practice of doing this, okay? I can tell you any information we ever got from the DMV relating to this request or any other request we never sent a single solicitation letter to those people.

    - Ruling: SUSTAINED, attorney work product.

- **Question 7** - Ex. C to Ex. 100 at 144:20 to 145:15

    MR. SIFERS: With respect to the VIN that's listed on the second page of Exhibit 34, where did you get that VIN?

6

1  MR. SADR: I don't know.

2  MR. SIFERS: If you are looking for potential witnesses –

3  MR. SADR: Okay

4  MR. SIFERS: Why did you check the vehicle vessel box and not just the driver's license identification box at the top of this form [referring
5  to Exhibit 34 and the Murillo case]?

6  MR. SADR: First of all, I can't talk about the particular case.

7  MR. SIFERS: Well, if your purpose was to ask for witnesses, I'm looking for witnesses, why wouldn't you want the identity of the
8  person instead of the identity of the vehicle?

9  MR. SADR: Because you want to find out if the vehicle – first of all, I can't talk about this case. But, in general, you want to run an
10  Autocheck on the vehicle before you contact them.

11  o Ruling: SUSTAINED, question adequately answered.

12  • **Question 8** - Ex. C to Ex. 100 at 150:16 to 155.5

13  MR. SIFERS: Then in response – in the second page through the end of Exhibit 35 [the complaint filed in the Terrazas case], there's a
14  sampling of DMV Attorney's Information Request forms that you filed with the DMV in the Terrazas case, correct?
15  
   MR. SADR: I wouldn't be able to tell you that or not.
16  
   MR. SIFERS: If you look at these documents, they all reference the
17  Terrazas case. Do you see that?

18  MR. SADR: One, that would be attorney-client privilege. I'm sending information as it relates to that. It could be that we had
19  different cases against –

20  MR. SIFERS: The basis for which you are seeking information according to these forms is seeking witnesses to a pattern and
21  practice of fraud, misrepresentations, and statutory violations "Unfair Practices Act, C.L.R.A., etc." related to the retail sale of
22  automobiles, via licensed California dealer"?

23  MR. SADR: Okay.

24  o Ruling: OVERRULED.

25  • **Question 9** - Ex. C to Ex. 100 at 154:16 to 155:2

26  MR. SIFERS: Did you request information on Statewide Auto Sales [mentioned on Exhibit 36]?
27  
   MR. SADR: I can't tell you yes or no. that would be work product.
28

7

        MR. SIFERS: If you requested it with the DMV, that would be disclosed.

        MR. SADR: I'm not going to talk about any other case.

- Ruling: OVERRULED.

- **Question 10** - Ex. C to Ex. 100 at 157:1-4

        MR. SIFERS: You said, "This is really a train wreck" [referring to a text message at Exhibit 37 sent by Kasra Sadr to Matthew Nash, an attorney]. What did you mean by that?

        MR. SADR: A train wreck. First of all, this relates to a case that I can't talk about.

- Ruling: OVERRULED.

- **Question 11** - Ex. C to Ex. 100 at 159:2 to 160:16

        MR. SIFERS: An e-mail from Matt Nash, says, "Hey, Kasra, I spoke to my clients again regarding your monthly retainer offer." Does that refresh your recollection as to any discussions with Mr. Nash that you had about a monthly retainer offer?

        MR. SADR: I wouldn't be able to talk about a particular case, sorry.

        MR. SIFERS: I'm not asking you about a particular case, I'm just asking you if you recall a discussion wherein you discussed a monthly retainer offer?

- Ruling: OVERRULED.

C.    Motion to Compel Deposition Answers from Richard Trefflich

Plaintiffs submitted this motion without a joint statement pursuant to Local Rule 251(d) and included an affidavit stating that despite extensive good faith attempts to secure a joint statement, defendants' participation was unachievable. ECF No. 93 at 1-6. Defendant Sadr later filed an opposition to the motion. ECF No. 96. Though this separate opposition is unauthorized, in the interest of judicial efficiency the court considers it in full. Plaintiffs' motion seeks to compel answers to questions not responded to at the deposition of Richard Trefflich, a non-party witness whose deposition was taken via Zoom on March 3, 2022. ECF No. 93 at 7. According to plaintiffs, Mr. Trefflich was represented by defendant Mr. Sadr at the deposition and Mr. Sadr instructed Mr. Trefflich not to answer multiple questions. Id. . Mr. Trefflich is alleged to be an agent of defendant the Car Law Firm. ECF No. 93 at 6.

Defendant Sadr raises the preliminary matter of improper service on Mr. Trefflich, a non-party, whom Mr. Sadr represented for the purpose of his deposition but claims to no longer represent. ECF No. 96. Mr. Sadr argues that because Mr. Trefflich is a non-party he must be personally served, and because personal service was not achieved, this motion cannot be heard. "Although the practice of attorneys representing both parties and non-party witnesses at depositions may be commonplace, there are situations in which such dual representation may cause concern." Est. of McNeil by & through Berkes v. FreestyleMX.com, Inc., No. 13CV2703 NLS (KSC), 2015 WL 13566928, at *2 (S.D. Cal. June 30, 2015). Here, the court is concerned that the status of representation is being used disingenuously. Plaintiffs filed an exhibit showing that Mr. Trefflich was served via e-mail on September 6, 2022. ECF No. 93-1 at 10. The exhibit also contains an e-mail from Mr. Sadr to plaintiffs' counsel, stating Mr. Trefflich forwarded Mr. Sadr the e-mail with the motion to compel, and in which Mr. Sadr goes on to state "Even though he is no longer my client, it has been my advice to him that he has not been properly served so he doesn't have to be intimidated by you." ECF No. 93 at 1 at 9. Plaintiffs' counsel asserts that personal service was attempted on Mr. Trefflich repeatedly between September 8 and September 12, 2022, but despite good faith effort, plaintiffs were unable to achieve personal service. ECF No. 93 at 11.

It is worth noting that in every single deposition question at issue in this motion to compel, Mr. Sadr instructed Mr. Trefflich not to answer. ECF No. 93 at 13-22. Considering the particular facts of this situation, including the relationship between Mr. Sadr and Mr. Trefflich and the fact that Mr. Trefflich is demonstrably aware of the existence of this motion and failed to respond at the instruction of Mr. Sadr, the court deems the motion served on Mr. Trefflich. Mr. Sadr accepted service on his own behalf and is also clearly aware of the motion. To allow improper service to be a barrier to this motion under the circumstances presented here would be an injustice. Thus, the court considers the motion on the merits. The court has reviewed the briefing and considered the exhibits. Again, to maintain clarity, each question at issue along with the court's ruling on the objection is presented in list format below.

////

- **Question 1** – TDT 56:1-4; 58:1-4,11-25 (ECF No. 93 at 104).

    MR. SIFERS: Can you look up and see if you have access to the list (referring to the marketing lists that Defendant CLF uses to send out solicitation letters)?

    MR. SADR: I'm not going to even have you do anything like that.

    o Ruling: OVERRULED.

- **Question 2** -- TDT 56:1-14; 60:14-25

    MR. SIFERS: …aside from the list [referring to the marketing lists that the Car Law Firm uses to send out solicitation letters], would you reference any other materials in these conversations [referring to persons who would call Defendant CLF in response its solicitation letter]?

    MR. SADR: I'm going to object and instruct you not to answer because now that goes into our work product once a client is called in, so I'm instructing him not to answer anything further on that.

    o Ruling: OVERRULED.

- **Question 3** - TDT 61:18 – 62:7

    MR. SIFERS: Under what circumstances would you review condition reports [of vehicles] from a [vehicle] auction?

    MR. SADR: I'm going to instruct you not to answer because it would necessarily require discussions about a particular client and a particular case. Attorney work product. You are instructed not to answer.

    o Ruling: OVERRULED.

- **Question 4** - TDT 62: 13-17

    MR. SIFERS: Mr. Trefflich, does the Car Law Firm have access to Manheim condition reports [of vehicles] directly from Manheim [a vehicle auction firm]?

    MR. SADR: I'm going to object again for that same purpose [i.e. work product privilege]. Instruct him not to answer.

    o Ruling: OVERRULED.

- **Question 5** - TDT 63:12-15

    MR. SIFERS: Have you ever logged onto Manheim's Online system to pull a [vehicle] condition report?

    MR. SADR: I'm going to object. You can only answer if it doesn't relate to working at our law firm.

- ○ Ruling: OVERRULED.
- **Question 6** - TDT 64:6-11

    MR. SIFERS: … Prior to any person signing up or entering into an agreement with the Car Law Firm to represent it, have you ever gone to any auction houses' Web site, logged in, and pulled a [vehicle] condition report for that client?

    MR. SADR: I'm going to instruct you not to answer. He just said "for that client."

    - ○ Ruling: OVERRULED.
- **Question 7** – TDT 65:5-12

    MR. SIFERS: Under what circumstances have you viewed [vehicle] condition reports from Manheim?

    MR. SADR: … Again, I'm going to instruct you if it relates to any case that you've worked on with a client, whether we've obtained it, a subpoena has obtained it, or any other form you are not allowed to answer. If you've seen a condition report out of work, you can go ahead and testify.

    - ○ Ruling: OVERRULED.
- **Question 8** - TDT 66: 8-20

    MR. SIFERS: Do you know if the Car Law Firm has a relationship with any dealers by which it's able to pull condition reports form auction houses, including Manheim?

    MR. SADR: Listen – you need stop, okay? Because there's things that I want to put on the record – an objection to anything relating to work. You need to slow down and stop so that I could put my objections on the record. You are not allowed to discuss anything or any process that the Car Law Firm does in its activities in any way. I'm instructing you not to answer.

    - ○ Ruling: OVERRULED.
- **Question 9** - TDT 67: 14-20

    MR. SIFERS: Do you know if the Car Law Firm contracts with any private investigators whereby the Car Law Firm is provided with information related to vehicles?

    MR. SADR: Same objections. It would necessarily be work product and I'm going to instruct you not to answer.

    - ○ Ruling: OVERRULED.

11

- **Question 10** - TDT 68: 19-24

    MR. SIFERS: ... to the best of your knowledge, has Nighthawk Investigations ever provided information to the Car Law Firm on vehicles?

    MR. SADR: I'm going to instruct you not to answer as it relates to anything relating to our law firm.

    o Ruling: OVERRULED.

- **Question 11** - TDT 69: 17-20

    MR. SIFERS: Have you ever personally accessed a Manheim [vehicle] condition report through the Manheim system?

    MR. SADR: Again, I'm going to instruct you if it's not related to our law firm, you can answer that.

    o Ruling: OVERRULED.

- **Question 12** - TDT 70: 22 to 71:2

    MR. SIFERS: Do you know if anyone at the Car Law Firm is able to run these title reports from the DMV?

    MR. SADR: Objection. I'm going to instruct you not to answer as it relates to the law firm and what we are able to or not able to do for clients.

    o Ruling: OVERRULED.

- **Question 13** - TDT 71: 4-11

    MR. SIFERS: Have you ever heard anyone at the Car Law Firm say, "We can just run a K.S.R. and find out who owns the vehicles"?

    MR. SADR: Objection. Instruct you not to answer that. It would necessarily have to do with a client on a case.

    o Ruling: OVERRULED.

- **Question 14** - TDT 73:14 - 74:21

    MR. SIFERS: And what percentage of people would actually send in the documents that you were reviewing (for the intake process of Defendant CLF)?

    MR. SADR: I'm going to instruct you not to answer. Now you are talking about necessarily clients sending in documents and so forth, also our business privacy.

    MR. SIFERS: And of all the calls that would come in, what percentage would you say actually turned into clients (for the intake process of Defendant CLF)?

      MR. SADR: Same objection. Instruct you not to answer.

- Ruling: OVERRULED.  There is no "business privacy" protection.

- **Question 15** - TDT 77:11 - 78:19

    MR. SIFERS: Is that something (any auction had ever announced that Ms. Akkawi's 2017 Kia Sorrento as being frame major/damaged) that you believe that you could look up and actually figure out?

    MR. SADR: I'm going to instruct you not to answer as it relates to our law firm's way of working. So if outside of how you do things at our law firm or how you would have done them at our law firm, you can answer that.  Otherwise, you are instructed not to answer.

    - Ruling: OVERRULED.

- **Question 16** - TDT 78:25 to 79:11

    MR. SIFERS: Do you believe that using the Car Law Firm system you could determine how that – how it was determined that an auction announced Ms. Yasmin Akkawi's Kia Sorrento has frame major/damaged?

    MR. SADR: On that one I'm going to instruct you not to answer. It has to do with our own proprietary way of doing things and whether we could find things out or not find things out or anything else that we do through our law firm.

    - Ruling: OVERRULED.

- **Question 17** - TDT 80: 7-12

    MR. SIFERS: Do you believe that you have a way to confirm whether or not Car Law Firm's internal files on Ms. Diana Akkawi show that her vehicle has been auction announced as frame major/damaged.

    MR. SADR: That, I'm going to instruct you not to answer.

    - Ruling: OVERRULED.

- **Question 18** - TDT 81:6-20

    MR. SIFERS: Is there anything that you could do to confirm how the Car Law Firm came to know that information (the 2013 Hyundai Accent purchased by Plaintiff Button and Plaintiff Stell in October of 2018)?

    MR. SADR: That one I'm going to instruct you not to answer as it relates to necessarily having to do with legal work at our firm.

    - Ruling: OVERRULED.

- **Question 19** - TDT 81:17-22

    MR. SIFERS: Mr. Trefflich, do you believe you have the means, using the Car Law Firm's files, to determine how it determines that Ms. Button and Mr. Stell's vehicle was auction announced as frame damage?

    MR. SADR: You are still instructed not to answer on that one.

    - Ruling: OVERRULED.

- **Question 20** – TDT 83:9-17

    MR. SIFERS: Do you believe you have the means by which to look up that information (how Defendant CLF came to know that Plaintiff Fox purchased a 2007 Toyota Camry) in the Car Law Firm's files?

    MR. SADR: Again, the same objections. Instruct you not to answer.

    - Ruling: OVERRULED.

- **Question 21** - TDT 84:17-21

    MR. SIFERS: Do you know where the Car Law Firm stores its information on all of the people who are sent letter but who didn't end up signing up?

    MR. SADR: I'm going to instruct you not to answer that.

    - Ruling: OVERRULED.

- **Question 22** - TDT 85:18 to 86:17; 14:1-4; 31:16-19

    MR. SIFERS: That's not what I'm asking. I'm asking very specifically under what circumstances would you [Mr. Trefflich] have had those conversations (referring to conversations of either Kasra Sadr or Narissa Nelson [office manager of Defendant CLF], if you recall?

    MR. SADR: Okay. I'm instructing you not to answer if it related to work.

    - Ruling: OVERRULED.

- **Question 23** - TDT 89:7-12

    MR. SIFERS: With respect to the people that do end up singing up with the Car Law Firm through mass mailers, do you know on average how much they recover?

    MR. SADR: I'm going to instruct you not to answer that at all.

    - Ruling: OVERRULED.

- **Question 24** - TDT 89:14-20

    MR. SIFERS: With respect to the clients that the Car Law Firm get through mass mailers, do you know what percentage of these cases are taken to a decision either at trial or arbitration?

    MR. SADR: I'm going to instruct you not to answer that as well.

    o Ruling: OVERRULED.

- **Question 25** - TDT 89:22 to 90:3

    MR. SIFERS: Do you know with respect to the clients that the Car Law Firm gets through mass mailers, how much money the Car Law Firm has realized in the past five years from those clients?

    MR. SADR: I'm going to instruct you not to answer that at all.

    o Ruling: OVERRULED.

- **Question 26** - TDT 92:23 to 94:4, Ex. 101

    MR. SIFERS: Have you ever reviewed any documents from the DMV that were sent in response to any Attorney's Information Request form like Exhibit 14?

    MR. SADR: I'm – stop. That would necessitate dealing with a particular client's case. I'm going to instruct you not to answer.

    o Ruling: OVERRULED.

- **Question 27** - TDT 90:22-25

    MR. SIFERS: Do you know if the Car Law Firm has any monthly retainer agreements with auto dealers?

    MR. SADR: I'm going to instruct you not to answer that.

    o Ruling: OVERRULED.

- **Question 28** - TDT 91:3-7

    MR. SIFERS: Do you know if the Car Law Firm has ever done work for auto dealers?

    MR. SADR: I'm going to instruct you not to answer that.

    o Ruling: OVERRULED.

- **Question 29** - TDT 96:1 to 97:13, Exhibit 102

    MR. SIFERS: And did it [the template fee agreement] look something substantially similar to Exhibit 16 [Exhibit 16 Car Law Form template for an "Attorney-Client Contingency Fee Agreement"]?

>   MR. SADR: Let me object as to vague. In fact, it's so vague I'm going to instruct not to answer.
>
>   o   Ruling: OVERRULED.  Vagueness does not support an instruction not to answer.

- **Question 30** – TDT 97:16-22

>   MR. SIFERS: … Mr. Trefflich, back when you were doing in-takes did that retainer agreement include a $9,500 flat fee charge?
>
>   MR. SADR: I'm going to instruct him not to answer because would specifically relate to a particular client.
>
>   o   Ruling: OVERRULED.

- **Question 31** - TDT 97:24 to 98:2

>   MR. SIFERS: Did the template that you would draw on have a $9,500 flat fee notation?
>
>   MR. SADR: I'm going to have the same exact objections and instruct him not to answer.
>
>   o   Ruling: OVERRULED.

- **Question 32** - TDT 98:5-12

>   MR. SIFERS: Do you know what that – do you know what inventory check for frame damaged vehicles means?
>
>   MR. SADR: I'm going to instruct you not to answer.
>
>   o   Ruling: OVERRULED.

- **Question 33** - TDT 98:13-19, Exhibit 102

>   MR. SIFERS: The next one [referring to Exhibit 16 Car Law Form template for an "Attorney-Client Contingency Fee Agreement"] says "Initiate and order vehicle history report from private investigator." Did you ever order vehicle history reports from private investigators in your time at the Car Law Firm?
>
>   MR. SADR: I'm going to instruct you not to answer as to what specifically relates to a particular client.
>
>   o   Ruling: OVERRULED.

- **Question 34** - TDT 98:21 to 99:3

>   MR. SIFERS: And what do you currently bill (at an hourly rate) out?
>
>   MR. SADR: I'm going to instruct you not to answer.
>
>   o   Ruling: OVERRULED.

- **Question 35** - TDT 99:4-10

    MR. SIFERS: Do you have a billing rate assigned to you at the Car Law Firm?

    MR. SADR: I'm going to instruct you not to answer.

    o Ruling: OVERRULED.

- **Question 36** - TDT 99:20-24

    MR. SIFERS: Have you ever ordered a vehicle investigative report for the Car Law Firm?

    MR. SADR: I'm going to instruct him not to answer.

    o Ruling: OVERRULED.

- **Question 37** - TDT 100:1-9, Exhibit 102

    MR. SIFERS: Do you know what a vehicle investigative report that's referenced in Exhibit 16 [referring to Exhibit 16 Car Law Form template for an "Attorney-Client Contingency Fee Agreement"] is referencing?

    MR. SADR: I'm going to instruct you not to answer.

    o Ruling: OVERRULED.

- **Question 38** - TDT 100:17-24, Exhibit 103

    MR. SIFERS: Do you know if this contingency fee agreement template [referring to Exhibit 17] is still in use by the Car Law Firm?

    MR. SADR: I'm going to instruct you not to answer.

    o Ruling: OVERRULED.

- **Question 39** - TDT 101:1-5; 100:17-24, Exhibit 102 and 103

    MR. SIFERS: Do you know if this one [referring to Exhibit 17 contingency fee agreement template of the Car Law Firm] or Exhibit 16 [another contingency fee agreement template of Car Law Firm] are older?

    MR. SADR: I'm going to instruct you not to answer.

    o Ruling: OVERRULED.

- **Question 40** - TDT 101:7-15; 100-17-24, Exhibit 102 and 103

    MR. SIFERS: Does that refresh your recollection as to whether or not this one [referring to Exhibit 17 contingency fee agreement template of the Car Law Firm] is older or younger than the one that we just looked at, Exhibit 16 [referring to the Exhibit 16 contingency

17

fee agreement template of the Car Law Firm]?

MR. SADR: I'm going to instruct you not to answer.

- Ruling: OVERRULED.

- **Question 41** - TDT 101:17-21; 100-17-24, Exhibit 102 and 103

    MR. SIFERS: Do you know why this one [referring to Exhibit 17 contingency fee agreement template of the Car Law Firm] doesn't have the 1,800 to $3,500 vehicle investigation report [which the Exhibit 16 contingency fee agreement template of the Car Law Firm] included?

    MR. SADR: I'm going to, again, instruct you not to answer.

    - Ruling: OVERRULED.

- **Question 42** - TDT 101:23 to 102:5, Exhibit 103

    MR. SIFERS: Do you know where those reports [the vehicle investigative reports for Exhibit 17 contingency fee agreement template of the Car Law Firm] are obtained from?

    MR. SADR: I'm going to instruct you not to answer.

    - Ruling: OVERRULED.

- **Question 43** - TDT 103:4-9

    MR. SIFERS: What did Mr. Sadr tell you about the lawsuit [referring to this instant lawsuit] when it was filed?

    MR. SADR: I'm going to instruct you not to answer anything as it relates to me now representing you. So anything after that, you are instructed not to answer.

    - Ruling: SUSTAINED, attorney-client privilege.

## IV. Conclusion

Plaintiffs' motions to compel are ruled upon as follows:

1. The filing at ECF No. 92 is STRICKEN as duplicative.

2. Plaintiffs' motion to compel responses to requests for production of documents not produced by defendant Nationwide VIN Marketing at its deposition, briefed at ECF No. 90, is GRANTED. All responsive documents shall be produced within 10 days of this order.

3. Plaintiffs' motion to compel responses to questions not answered by defendant Kasra

Sadr for himself and for defendant VIN Marketing at his deposition, briefed at ECF No. 91, is GRANTED in part and DENIED in part, such that defendants must provide complete written responses to all questions contained in the motion except for questions 1, 6, and 7, within 10 days of this order.

4. Plaintiffs' motion to compel responses to questions not answered by Richard Trefflich at his deposition, briefed at ECF No. 93, is GRANTED in part and DENIED in part, such that Mr. Trefflich must provide complete written responses to all questions contained in the motion except for question 43, within 10 days of this order.

IT IS SO ORDERED.

DATED: September 26, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE