1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   DIANA AKKAWI, et al.,                    No.  2:20-cv-01034-MCE-AC

12               Plaintiffs,

13         v.                                 **MEMORANDUM AND ORDER**

14   KASRA SADR, et al.,

15               Defendants.

16

17         Through this action, Plaintiffs Diana Akkawi, Yasmin Akkawi, Katelyn J. Button,

18   Eric Stell, Steve W. Fox, and Edmond Tarverdian (collectively, "Plaintiffs") seek to

19   recover damages and obtain injunctive relief against Defendants Kasra Sadr ("Sadr"),

20   the Car Law Firm ("CLF"), the Sadr Law Firm ("SLF"), and Nationwide VIN Marketing

21   ("Nationwide") (collectively, "Sadr Defendants"), as well as Defendant Ryan Bancaya

22   ("Bancaya").  Plaintiffs allege, inter alia, that all Defendants conspired to acquire

23   Plaintiffs' personal and private records from the California Department of Motor Vehicles

24   ("DMV") in order to solicit representation for litigation.[1]  See First Am. Compl., ECF

25   No. 101, at 2 ("FAC").

26   ///

27   _____

28         [1] The DMV was a previous Defendant to this action before it was voluntarily dismissed by all
     Plaintiffs.  See ECF Nos. 9–10.

1    Presently before the Court are the following motions:  (1) Sadr Defendants'

2   Motion for Summary Judgment, ECF No. 137; (2) Plaintiffs' second Administrative

3   Motion for an Order Vacating the Current Discovery Cut-off, ECF No. 140; and (3)

4   Plaintiffs' Motions for Alternative Service of Non-Party Witnesses Nima Heydari

5   ("Heydari") and Narissa Nelson ("Nelson"), ECF Nos. 171–72.  Additionally, on July 14,

6   2023, this Court ordered Plaintiffs "to show cause in writing as to whether Defendant

7   Ryan Bancaya was properly served in accordance with Federal Rule of Civil Procedure

8   4(f) and the Hague Convention" ("OSC").  ECF No. 183.  Plaintiffs timely filed a response

9   to the OSC on July 24, 2023, and Defendants filed objections thereto on July 28, 2023.

10   ECF Nos. 184–85.

11    For the following reasons, Sadr Defendants' Motion for Summary Judgment is

12   DENIED without prejudice, Plaintiffs' Motions for Alternative Service are each GRANTED

13   in part and DENIED in part, Plaintiffs' Administrative Motion for an Order Vacating the

14   Current Discovery Cut-off is GRANTED in part and DENIED in part, and the OSC is

15   DISCHARGED.[2]

16

17                                    **BACKGROUND**

18

19    **A.    Procedural History**

20    On May 20, 2020, Plaintiffs filed their initial Complaint in this Court, alleging the

21   following causes of action against Sadr Defendants:  (1) Violations of the Driver's

22   Privacy Protection Act (18 U.S.C. §§ 2721 et seq.); (2) Violations of California Vehicle

23   Code §§ 1808 et seq.; (3) Conversion; (4) Trespass to Personal Property; (5) Intrusion

24   into Private Affairs; (6) Negligence; (7) Civil Conspiracy; (8) Unjust Enrichment;

25   (9) Violations of California's False Advertising Law (California Business and Professions

26   Code §§ 17500 et seq.); (10) Violations of California's Unfair Competition Law (id. §§

27   _____

28         [2] Because oral argument would not have been of material assistance, the Court ordered these
matters submitted on the briefs.  E.D. Local Rule 230(g).

1   17200 et seq.); (11) Violation of the Federal Right to Privacy; and (12) Declaratory

2   Relief.  ECF No. 1.  About a month later, on June 22, 2020, Plaintiffs filed a Motion for a

3   Temporary Restraining Order and Motion for Preliminary Injunction, which this Court

4   denied.  ECF Nos. 12, 28.

5         On July 7, 2020, Sadr Defendants filed Motions to Dismiss the Complaint

6   pursuant to Federal Rule of Civil Procedure 12(b)(6)[3] and the Anti-SLAPP (Strategic

7   Lawsuit Against Public Participation) provisions of California Code of Civil Procedure

8   § 425.16(b).  See ECF Nos. 21–22.  The Court denied both Motions in their entirety on

9   September 1, 2021.  ECF No. 30.  Sadr Defendants subsequently filed their Answer on

10  October 1, 2021.  ECF No. 32.  The deadline to complete non-expert discovery was

11  October 1, 2022.  See ECF No. 5, at 2 ("All discovery, with the exception of expert

12  discovery, shall be completed no later than three hundred sixty-five (365) days from the

13  date upon which the last answer may be filed with the Court pursuant to the Federal

14  Rules of Civil Procedure.").

15        Plaintiffs obtained information relating to Bancaya through Sadr's deposition on

16  February 10, 2022, and through the production of documentation showing Sadr's

17  monthly payments to Bancaya on April 15, 2022.  See ECF No. 35, at 8–9.  On April 28,

18  2022, Plaintiffs filed a Motion for Leave to File the FAC, which sought to add Bancaya as

19  a Defendant.  See id.  A couple months later, on July 1, 2022, the assigned magistrate

20  judge denied a motion for a protective order filed by Sadr Defendants on procedural

21  grounds.  ECF No. 63.  The magistrate judge also denied four of Plaintiffs' motions to

22  compel discovery responses on procedural grounds on July 5, 2022.  ECF No. 64.

23        Plaintiffs filed their first Administrative Motion for an Order Vacating the Current

24  Discovery Cut-off on September 6, 2022.  ECF No. 82.  This Court granted that Motion

25  and Plaintiffs' Motion for Leave to File the FAC on September 21, 2022, and the

26  deadline to complete non-expert discovery was extended by 180 days to March 21,

27  2023.  See ECF No. 97.  Plaintiff subsequently filed the operative FAC on September

28  _____

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

3

1    27, 2022.  ECF No. 101.  That same day, the magistrate judge granted in part and

2    denied in part Plaintiffs' motions to compel discovery responses and denied Sadr

3    Defendants' motion for a protective order.  ECF Nos. 102–03.

4            On October 18, 2022, Sadr Defendants filed a Motion to Dismiss the FAC, which

5    was fully briefed.  ECF Nos. 107, 115, 118.  The magistrate judge granted another

6    motion to compel filed by Plaintiffs on February 9, 2023.  ECF No. 129.  Plaintiffs

7    subsequently filed a motion for sanctions on February 10, 2023, and noticed it before the

8    magistrate judge, but a ruling has not yet issued.  ECF No. 130; <u>see</u> ECF No. 176

9    (vacating hearing on the motion for sanctions in light of the Court's order staying the

10   case).

11           On February 16, 2023, before the Court could issue an order on the Motion to

12   Dismiss, Sadr Defendants filed a Motion for Summary Judgment, which stated that they

13   withdrew their Motion to Dismiss as a result.  ECF No. 137, at 2.  Plaintiffs filed their

14   second Administrative Motion to Vacate the Current Discovery Cut-off on the same day

15   following Sadr Defendants' refusal to stipulate to extend the discovery deadline.  ECF

16   No. 140; <u>see</u> <u>also</u> Ex. 3, <u>id.</u>, at 29–35 (emails between counsel).

17           On March 9, 2023, the magistrate judge denied Plaintiffs' motion to compel

18   responses to a second set of requests for production.  ECF No. 151.  Sadr Defendants

19   filed a request for entry of default against Bancaya on March 13, 2023, which was

20   declined by the Clerk of Court on grounds that Bancaya "is a resident of a foreign

21   country whose 90 day response time has not yet expired."  ECF Nos. 156, 158.  On

22   March 17, 2023, the magistrate judge denied Plaintiffs' motion to compel a non-party to

23   respond to a subpoena on procedural grounds.  ECF No. 168.  Days later, on March 27,

24   2023, Plaintiffs filed their Motions for Alternative Service of subpoenas on non-parties

25   Heydari and Nelson.  ECF Nos. 171–72.  In light of the numerous pending motions, the

26   Court stayed the case on April 5, 2023.  ECF No. 175.

27   ///

28   ///

                                                4

**B.     Attempted Service of Subpoenas on Heydari and Nelson**

**1.     Heydari**

Heydari is an attorney at CLF and works with Sadr.  <u>See</u> Ex. 4, Sadr Dep., ECF No. 171, at 39–41.  On August 29, 2022, Heydari was personally served at his residence in San Diego, California, with the first "Subpoena to Testify at a Deposition in a Civil Action" and an attachment containing requests for production of documents.  <u>See</u> Ex. 3, Sifers Decl., <u>id.</u>, at 36.  Heydari subsequently filed a motion to quash the subpoena, which the magistrate judge granted on December 15, 2022.  <u>See</u> ECF Nos. 110, 122.

On January 6, 2023, Plaintiffs issued their second "Subpoena to Testify at a Deposition in a Civil Action" with an appearance date of February 10, 2022, and Plaintiffs' counsel instructed the process server to personally serve Heydari at the same residence.  Sifers Decl., ECF No. 171, at 13 ¶¶ 7–8.  According to the process server's "Declaration of Reasonable Diligence," the following attempts to personally serve Heydari at his residence were made, some of which Heydari disputes:

1.   January 13, 2023, at 10:10 a.m.:  "Attempted service, subject not home. Per concierge, subject is on vacation and is not sure when [he]'ll be back." Heydari states he was on vacation.

2.   January 16, 2023, at 11:13 a.m.:  "Attempted service, subject not home per concierge.  Not sure if back from vacation."  Heydari states he was on vacation.

3.   January 23, 2023, at 5:20 p.m.:  "Attempted service, there was no answer[.]"  Heydari states he "was out for work, and hadn't returned home yet."

4.   January 28, 2023, at 8:20 a.m.:  "Attempted service, there was no answer. No movement, no response, no activity."  Heydari states that this attempt was made "during work hours[.]"

///

1               5.    January 30, 2023:  "STAKEOUT AT RESIDENCE (2hrs):  7:30 AM – 9:30

2                      AM – No activity throughout stakeout.  Attempted service, there was no

3                      answer.  No one left or entered the unit."  Heydari disputes this, claiming

4                      that the process server could not "know whether or not any activity occurs

5                      at [his] unit door without getting past the concierge at the entrance to [the]

6                      complex, much less conduct a two-hour stake-out as they have claimed."

7  See Ex. 6, Sifers Decl., id., at 51–52; Heydari Decl., ECF No. 178, at 6–7.  On March 2,

8  2023, Plaintiffs' counsel emailed the subpoena to Heydari, but he did not respond.  See

9  Ex. 7, Sifers Decl., ECF No. 171, at 54.

10               **2.**     **Nelson**

11     Nelson is the office manager at CLF.  See Ex. 1, Sadr Dep., ECF No. 172, at 23–

12  24.  On September 30, 2022, after multiple attempts, Nelson was personally served at

13  her residence in San Diego, California, with the first "Subpoena to Testify at a Deposition

14  in a Civil Action" and an attachment containing requests for production of documents.

15  See Exs. 3–4, Sifers Decl., id., at 42–48.  Like Heydari, Nelson also filed a motion to

16  quash the subpoena, which the magistrate judge granted on December 15, 2022.  See

17  ECF Nos. 108, 122.

18     On January 6, 2023, Plaintiffs issued their second "Subpoena to Testify at a

19  Deposition in a Civil Action" with an appearance date of February 10, 2022, and

20  Plaintiffs' counsel instructed the process server to personally serve Nelson at the same

21  residence.  Sifers Decl., ECF No. 172, at 14 ¶¶ 7–8.  According to the process server's

22  "Not Found or Non Service Return" form, the following attempts to personally serve

23  Nelson at her residence were made, most of which Nelson disputes based on the history

24  of her doorbell camera with a motion detector:

25               1.    January 12, 2023, at 4:51 p.m.:  "Attempted service, A Caucasian/F[emale]

26                      about 13–15 [years old] said the subject doesn't live here, then told [the

27                      server] to get off her property.  There is a silver SUV in the driveway,

28                      [license omitted].  They were avoiding before."  Nelson states that her

niece "answered and told the man [Nelson] was not home.  Since she was there alone, she told him to leave."  Furthermore, Nelson generally claims that she has five vehicles and that she "utilize[s] more than one," so "[j]ust because the SUV is there, does not mean" she is.

2. January 14, 2023, at 7:40 a.m.:  "Attempted service, there was no answer." Nelson claims that "no motion was detected and no one rang the doorbell around" this time.

3. January 15, 2023, at 4:15 p.m.:  "Attempted service, there was no answer. Gate is locked, car is here."  Nelson again claims that "no motion was detected and no one rang the doorbell around" this time.

4. January 16, 2023, at 7:19 a.m.:  "Attempted service, there was no answer. No changes, same car in driveway."  Nelson does not address this in her declaration.

5. January 18, 2023, at 2:45 p.m.:  "Attempted service, there was no answer. Heard someone talking inside.  Evading service."  Nelson again claims that "no motion was detected and no one rang the doorbell around" this time.

6. January 20, 2023, at 6:05 p.m.:  "Attempted service, there was no answer. The SUV is present."  Nelson claims that she "was out at an appointment" but that "no motion was detected and no one rang the doorbell around" this time.

7. January 21, 2023, at 7:13 a.m.:  "Attempted service, there was no answer. No change."  Nelson again claims that "no motion was detected and no one rang the doorbell around" this time.

8. January 27, 2023, at 6:10 a.m.:  "STAKEOU[T] AT RESIDENCE (2hrs): Lights inside garage.  Her car is in the driveway.  House dark. / 7:00[] AM No activity / 8:10 AM – Attempted service, there was no answer, nobody left."  Nelson claims that "it would have been impossible if someone was

///

7

outside on a stakeout not to have seen [her] leave taking the kids to
school."

     9. January 28, 2023, at 7:04 a.m.:  "Attempted service, there was no answer."
Nelson again claims that "no motion was detected and no one rang the
doorbell around" this time.

    10. January 29, 2023, at 7:10 p.m.:  "Attempted service, there was no
answer."  Nelson claims that she "was at an appointment[.]"

See Ex. 7, Sifers Decl., id., at 67; Nelson Decl., ECF No. 169, at 6–7.  On March 2,
2023, Plaintiffs' counsel emailed the subpoena to Nelson, but she did not respond.  See
Ex. 8, Sifers Decl., ECF No. 172, at 70.

### C.    Service on Bancaya

    On April 13, 2022, Plaintiffs' counsel states that he located Bancaya's LinkedIn
profile, which listed an address in the Philippines.  Sifers Decl., ECF No. 184, at 11 ¶ 3;
see Ex. 2, id., ECF No. 184-2 (screenshot of a LinkedIn profile for Ryan Bancaya).  As
previously stated, this Court granted Plaintiffs' Motion for Leave to File the FAC to add
Bancaya as a Defendant on September 21, 2022, and Plaintiffs filed the FAC on
September 27, 2022.  ECF Nos. 97, 101.  Plaintiffs' counsel states that his office began
their attempts to serve Bancaya in the Philippines in accordance with the Convention on
the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial
Matters ("Hague Service Convention") and the Filipino Guidelines and Rules of Civil
Procedure.  See Sifers Decl., ECF No. 184, at 12 ¶ 8.

    On October 18, 2022, Plaintiffs' counsel submitted the Summons and FAC,
Request for Service Abroad of Judicial or Extrajudicial Documents, and confirmation of
payment to the Service Convention Unit for the Office of the Court Administrator of the
Supreme Court of the Philippines ("Service Convention Unit").  Id. at 13–14 ¶ 12.  The
Service Convention Unit confirmed receipt of the documents on October 30, 2022.  Id. at
14 ¶ 13.

///

1    On December 16, 2022, and January 5, 2023, Plaintiffs' counsel reached out to

2   the Regional Trial Court in Silay City, Negros Occidental ("Regional Trial Court") for a

3   status update.  Id. at 14 ¶ 15.  On January 9, 2023, the Regional Trial Court sent the

4   following email:

5           Please send us the exact address of Ryan Bancaya for the
            following reasons:
6
7           1.    There are many Bancayas in Silay City

8           2.    After diligent efforts, we could not trace his whereabouts

9   Ex. 13, id., ECF No. 184-13, at 2–3.  The next day, on January 10, 2023, Plaintiffs'

10  counsel emailed the address found on the LinkedIn profile to the Regional Trial Court.

11  Id. at 2.  Plaintiffs' counsel states the following:

12          I believe that the Regional Trial Court, using the address we
            provided, was able to use its[] resources to determine that
13          Defendant Bancaya resided at Centerville.  The Centerville
            address is located within three miles of the address I provided
14          from Defendant Bancaya's LinkedIn profile.  Shortly thereafter,
            I believe a process server was assigned to effectuate service
15          on Defendant Bancaya.

16  Sifers Decl., ECF No. 184, at 14–15 ¶ 15.

17          Between January 17 and February 3, 2023, Plaintiffs' counsel states that his

18  office "made multiple inquiries as to the status on the service of Defendant Bancaya and

19  [counsel] was informed that the Regional Trial Court had been unable to effectuate

20  service."  Id. at 15 ¶ 17.  On February 6, 2023, the Regional Trial Court stated in an

21  email that personal service was attempted on January 27, February 2, and February 6,

22  but Bancaya was "not around."  Ex. 15, id., ECF No. 184-15, at 2.  However, on

23  February 7, 2023, Plaintiffs' counsel states that his office received confirmation that

24  Bancaya was served.  Sifers Decl., ECF No. 184, at 15–16 ¶ 19.  According to the proof

25  of service filed with the Court on February 8, 2023, a Filipino process server says that he

26  unsuccessfully made three attempts on different days to personally serve Bancaya, but

27  on February 7, the summons was served on a housekeeper "with sufficient age and

28  discretion" at the residence "who acknowledged recei[pt] [of] the summons and

1   complaint with Annexes and refused to sign." See ECF No. 128.  On February 10, 2023,

2   Plaintiffs' counsel "caused [his] office to serve" written discovery requests and a notice of

3   deposition scheduled for March 16, 2023.  Sifers Decl., ECF No. 140, at 9 ¶ 5.  To date,

4   Bancaya has not appeared in this action or responded to Plaintiffs' discovery requests.

5

6                                    **STANDARDS**

7

8       **A.    Motion for Alternative Service**

9       Rule 45(b)(1) states that "[s]erving a subpoena requires delivering a copy to the

10  named person[.]"  "The majority rule is that Rule 45 requires personal service, as

11  opposed to service by mail."  RP Golden State Mgmt., LLC v. Ohio Sec. Ins. Co., No.

12  1:19-cv-00600-DAD-JLT, 2020 WL 4748324, at *5 (E.D. Cal. Aug. 17, 2020) (collecting

13  cases).  "However, a growing but still minority trend among courts has been to allow

14  substitute service of a Rule 45 subpoena via alternative methods, such as mail delivery

15  pursuant to a court order."  Id. (collecting cases).  "Courts are more inclined to grant

16  such alternative service where the serving party has provided sufficient evidence of its

17  earlier diligence in attempting to effectuate personal service."  Fujikura Ltd. v. Finisar

18  Corp., No. 15-mc-80110-HRL (JSC), 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015);

19  see Hardy v. Moreno, No. 1:21-cv-00327-ADA-EPG (PC), 2022 WL 4667108, at *1 (E.D.

20  Cal. Sept. 30, 2022) (finding service of the subpoena by mail appropriate due to the non-

21  party's refusal to accept service).  Even if the Court grants alternative service, the

22  method must still be "reasonably calculated to provide timely, fair notice and an

23  opportunity to object or file a motion to quash."  Fujikura, 2015 WL 5782351, at *5.

24      **B.    Service Under Rule 4(f) and the Hague Service Convention**

25      Rule 4(f)(1) provides, in relevant part, that

26              [u]nless federal law provides otherwise, an individual—other
                than a minor, an incompetent person, or a person whose
27              waiver has been filed—may be served at a place not within any
                judicial district of the United States:
28

                                            10

1
2
3

> by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]

4    Under the Hague Service Convention, the Central Authority of the country where the

5    defendant is located will effectuate service. <u>See</u> Convention on the Service Abroad of

6    Judicial and Extrajudicial Documents in Civil or Commercial Matters arts. 3–5, Nov. 15,

7    1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Specifically,

8
9

> [t]he Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –

10
11

> (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or

12
13

> (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

14   <u>Id.</u> at art. 5. The Central Authority must complete a certificate which "shall state that the

15   document has been served and shall include the method, the place and the date of

16   service and the person to whom the document was delivered. If the document has not

17   been served, the certificate shall set out the reasons which have prevented service." <u>Id.</u>

18   at art. 6. Both the United States and the Philippines are signatories to the Hague

19   Service Convention. <u>See</u> Hague Conference on Private International Law,

20   https://www.hcch.net/en/states/hcch-members/details1/?sid=121 (last visited August 7,

21   2023).

22       **C.       Motion to Vacate Current Discovery Cut-Off**

23       Generally, the Court is required to enter a pretrial scheduling order within 90 days

24   of service of the complaint. Fed. R. Civ. P. 16(b). The scheduling order "controls the

25   course of the action" unless modified by the Court. Fed. R. Civ. P. 16(d). Orders

26   entered before the final pretrial conference may be modified upon a showing of "good

27   cause," Fed. R. Civ. P. 16(b), but "[t]he court may modify the order issued after a final

28   ///

1   pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e); <u>see also</u>

2   <u>Johnson v. Mammoth Recreations</u>, 975 F.2d 604, 608 (9th Cir. 1992).

3         Rule 16(b)'s "good cause" standard primarily considers the diligence of the party

4   seeking the amendment. <u>Id.</u> at 609. The district court may modify the pretrial schedule

5   "if it cannot reasonably be met despite the diligence of the party seeking the extension."

6   <u>Id.</u>; Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment). Moreover,

7   carelessness is not compatible with a finding of diligence and offers no reason for a

8   grant of relief. <u>Johnson</u>, 975 F.2d at 609. "Although the existence or degree of

9   prejudice to the party opposing the modification might supply additional reasons to deny

10  a motion, the focus of the inquiry is upon the moving party's reasons for seeking

11  modification." <u>Id.</u> (citing <u>Gestetner Corp. v. Case Equip. Co.</u>, 108 F.R.D. 138, 141

12  (D. Me. 1985)). If the moving party was not diligent, the Court's inquiry should end. <u>Id.</u>

13

14                              **ANALYSIS**

15

16  **A.   Plaintiffs' Motions for Alternative Service**

17        Because their process servers made numerous unsuccessful attempts to serve

18  Heydari and Nelson with deposition subpoenas at their residences, Plaintiffs ask the

19  Court to permit service of the subpoenas and copies of the Court's order by alternative

20  means, specifically as follows: (1) delivery "by U.S. Mail, First Class, Postage Prepaid,

21  and by Certified Mail, Return Receipt Requested, Postage Prepaid," to Heydari and

22  Nelson's residences; (2) delivery "by U.S. Mail, First Class, Postage Prepaid, and by

23  Certified Mail, Return Receipt Requested, Postage Prepaid," to their place of business

24  located at 1455 Frazee Road, Suite 500, San Diego, California 92108; (3) delivery to

25  their email addresses; and (4) personal delivery at their residences by "knock[ing] on the

26  door and provid[ing] a copy to any person answering," but if no one answers the door,

27  the process server shall leave copies of the documents "at the door in a conspicuous

28  place." <u>See</u> ECF Nos. 171, at 9; 172, at 9–10. Heydari and Nelson each filed near-

1  identical oppositions to these Motions, both of which merely argue that service by

2  publication is not appropriate.  See ECF Nos. 169, at 4–5; 178, at 4–5.  There is no

3  request to serve by publication before the Court, however, so these arguments are

4  irrelevant.

5        As previously stated, a minority of courts allow alternative service usually when

6  "the serving party has provided sufficient evidence of its earlier diligence in attempting to

7  effectuate personal service."  Fujikura, 2015 WL 5782351, at *5.  Here, the process

8  server made numerous attempts to serve Heydari and Nelson at their residences on

9  multiple days and at different times.  See Ex. 6, Sifers Decl., ECF No. 171, at 51–52;

10  Ex. 7, Sifers Decl., ECF No. 172, at 67.  While Heydari and Nelson have given various

11  reasons as to why they were not present, the Court finds that Plaintiffs and their process

12  server have been extremely diligent in trying to effectuate personal service, especially

13  since Heydari and Nelson were personally served with the initial subpoenas at the same

14  residences back in August and September 2022.  See Ex. 3, Sifers Decl., ECF No. 171,

15  at 36; Ex. 4, Sifers Decl., ECF No. 172, at 48.  Neither Heydari nor Nelson have even

16  addressed Plaintiffs' proposed alternative service plan, let alone attempted to explain

17  why it would be insufficient or improper, other than to object to Plaintiffs' counsel

18  emailing them.  See Nelson Decl., ECF No. 169, at 7; Heydari Decl., ECF No. 178, at 6.

19  In fact, both of them state in their declarations that Plaintiffs' counsel "can mail letters at

20  [their] address[es], and [they] will get them."  See id.

21        Accordingly, the Court finds that in this instance, alternative service of the

22  subpoenas on Heydari and Nelson is appropriate.  However, the Court will only permit

23  service of the subpoenas by mail to Heydari and Nelson's residences and office.

24  Therefore, Plaintiffs' Motions for Alternative Service are GRANTED as to service by mail

25  but DENIED as to the other alternative methods.

26      **B.**    **OSC as to Service on Bancaya**

27        As previously stated, this Court ordered Plaintiffs to show cause in writing as to

28  whether Bancaya was properly served.  ECF No. 183.  According to Plaintiffs' counsel,

1  Filipino Rule of Civil Procedure 14, § 6, allows substituted service in the following

2  instance:

3              If, for justifiable causes, the defendant cannot be served
             personally after at least three (3) attempts on two (2) separate
4              dates, service may be effected:

5              (a) By leaving copies of the summons at the defendant's
             residence to a person at least eighteen (18) years of age and
6              of sufficient discretion residing therein[.]

7  Ex. 6, Sifers Decl., ECF No. 184-6, at 2.  Because the Filipino authorities unsuccessfully

8  attempted to personally serve Bancaya three times, Plaintiffs' counsel states it was

9  proper to serve the housekeeper.  See ECF No. 184, at 9.  The Court agrees.

10  Accordingly, because the Court finds that Bancaya was properly served in accordance

11  with Rule 4(f), the Hague Service Convention, and the Filipino Rules of Civil Procedure,

12  the OSC issued on July 14, 2023, is DISCHARGED.

13          **C.    Plaintiffs' Second Administrative Motion for Order Vacating the
                Current Discovery Cut-off**
14

15          Like with their previous Motion, Plaintiffs once again ask the Court to continue the

16  fact discovery deadline by six to eight months.  See ECF No. 140, at 6.  First, Plaintiffs

17  argue that this is necessary "[g]iven the need to conduct discovery on the claims and

18  parties to the [FAC], and the pending ruling on [Sadr] Defendants' Motion to Dismiss,

19  which will likely result in Defendants filing an Answer and discovery being conducted on

20  that Answer[.]"  Id. at 5.  However, Sadr Defendants withdrew their Motion to Dismiss

21  and aside from adding Bancaya as a Defendant, the material allegations in the FAC are

22  the same as those in the original Complaint.  Sadr Defendants thus are "not required to

23  file a new answer to an amended complaint when the allegations in the amended

24  complaint do not 'change the theory or scope of the case.'"  KST Data, Inc. v. DXC Tech.

25  Co., 980 F.3d 709, 715 (9th Cir. 2020) (citation omitted).

26          Plaintiffs also assert that Sadr Defendants "have failed and refused to respond to

27  a number of discovery requests which will necessitate additional law and motion[.]"  ECF

28  No. 140, at 6 (stating that there are "various discovery disputes, namely Defendants'

1   refusal to respond to some of Plaintiffs' written discovery" and that "there are a multitude

2   of outstanding discovery issues to which the parties intend to seek Court intervention.").

3   Aside from these generic statements, Plaintiffs have not provided any indication as to

4   what discovery from Sadr Defendants is still outstanding and why they have not been

5   able to acquire it after three years of litigation.  As set forth above, Plaintiffs have filed

6   numerous motions to compel discovery responses over the course of this litigation and

7   the magistrate judge has ruled on all of them except one pending motion for sanctions.

8           Lastly, Plaintiffs argue that a discovery extension is appropriate because Bancaya

9   was just served.  See id. at 6.  However, Bancaya has not yet appeared in this action

10  despite Plaintiffs serving him with the FAC, written discovery requests, and a notice of

11  deposition.  When a defendant fails to appear, the proper recourse for a plaintiff is to

12  obtain an entry of default.  See Fed. R. Civ. P. 55(a).  Although Plaintiffs want Bancaya

13  to respond to their discovery requests, this case cannot remain at a standstill waiting for

14  one party who may or may not respond.

15          Because the Court is granting Plaintiffs' Motions for Alternative Service, fact

16  discovery will need to be reopened to conduct the depositions of Heydari and Nelson.

17  As a result, the Court is inclined to give Plaintiffs one last opportunity to obtain discovery

18  from Bancaya.  With that said, the Court finds that Plaintiffs have not demonstrated good

19  cause to reopen all non-expert discovery for six to eight months.  Therefore, the Court

20  will extend the discovery deadline by ninety (90) days only for the limited purposes of

21  (1) serving subpoenas on and conducting depositions of Heydari and Nelson and

22  (2) obtaining discovery from Bancaya.  No good reason has been presented and the

23  Court will not extend the fact discovery deadline again.

24          **D.    Sadr Defendants' Motion for Summary Judgment**

25          Because discovery is being reopened for limited purposes, Sadr Defendants'

26  Motion for Summary Judgment, ECF No. 137, is DENIED without prejudice.

27  ///

28  ///

15

1

**CONCLUSION**

2

3        For the foregoing reasons, the Court orders the following:

4        1.        Plaintiffs' Motions for Alternative Service, ECF Nos. 171–72, are each

5   GRANTED in part and DENIED in part.  Not later than seven (7) days from the issuance

6   of this Memorandum and Order, Plaintiffs shall serve Heydari and Nelson a copy of the

7   subpoena and a copy of this Memorandum and Order by mail delivery to their

8   residences and office only.

9        2.        The OSC issued on July 14, 2023, ECF No. 183, is DISCHARGED.

10       3.        Plaintiffs' Administrative Motion for an Order Vacating the Current

11  Discovery Cut-off, ECF No. 140, is GRANTED in part and DENIED in part.  Discovery is

12  reopened for ninety (90) days for the following limited purposes only:  (a) serve

13  subpoenas on and conduct depositions of Heydari and Nelson and (b) obtain discovery

14  from Bancaya.

15       4.        Sadr Defendants' Motion for Summary Judgment, ECF No. 137, is

16  DENIED without prejudice.

17       5.        The stay imposed on April 5, 2023, ECF No. 175, is LIFTED.

18       IT IS SO ORDERED.

19  Dated:  August 11, 2023

20  _____

21  MORRISON C. ENGLAND, JR
    SENIOR UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28